UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In RE: MICHAEL ROY BRESSLER    CASE No.06-11897

-------------------------------------------------------------------X

WILLIAM FORREST and SHAWN STEIBEL,

    Plaintiffs,    Adv. Pro. No.

   - against -

MICHAEL ROY BRESSLER,

    Defendant.

-------------------------------------------------------------------X

<u>COMPLAINT SEEKING DENIAL OF DISCHARGE AND/OR DETERMINATION OF
DISCHARGEABILITY OF DEBT</u>

  COMES NOW, the Plaintiffs, WILLIAM FORREST and SHAWN STEIBEL, ("Forrest and

Steibel"), by and through its undersigned attorneys and sues the Debtor, MICHAEL ROY

BRESSLER, ("Bressler"), and states as follows:

1. This is an action seeking an exception to and denial of discharge pursuant to §§ 523(a)(4),

523(a)(6) of the Bankruptcy Code and §§727(a)(2) and 727(a)(4) of the Bankruptcy Code.

2. The Debtor filed a petition in bankruptcy under Chapter 7 on August 15, 2006.

3. The plaintiffs, Forrest and Steibel are creditors with unsecured, unliquidated claims against

the Debtor.

4. This proceeding is related to the Chapter 7 bankruptcy case and this Court has jurisdiction

pursuant to 28 U.S.C. §1334(a) and §157.

5. This is a core proceeding.

6. Prior to filing the petition herein, the Debtor was the attorney for the plaintiffs herein, Forrest

and Steibel.

7. Debtor entered into an illegal and fraudulent 40% contingent fee retainer agreement with Forrest and Steibel to represent them in an employment discrimination action. Attached hereto and incorporated herein as Exhibit "A" is a true copy of said 40% retainer agreement.

8. Said employment discrimination action was filed and prosecuted by Debtor in the U.S.D.C. for the Eastern District of New York, under case no. 97 Civ. 5359.

9. Thereafter, in order to claim entitlement to monies received from the prosecution of said employment discrimination action, debtor willfully made fraudulent representations to plaintiffs herein concerning the true nature and status of the aforesaid employment discrimination proceeding.

10. Thereafter, in order to further claim entitlement to monies received from the prosecution of said employment discrimination action, debtor willfully submitted fraudulent affidavits to the court wherein the employment discrimination action was pending.

11. Specifically, in preparation for defending against a motion for summary judgment in the aforesaid employment discrimination action, Debtor personally meet with two witness, one, Helen Tatzel and one, Teresa Edreira at restaurant on Long Island known as T.G.I.F., in or about September of 1999. Debtor informed each witness that they were key witnesses in his case.

12. Debtor interviewed these witnesses for the purpose of obtaining affidavits to oppose a summary judgment notion which he had pending against, Forrest and Steibel in said employment discrimination case.

13. Said Helen Tatzel and said Teresa Edreira agreed to provide the affidavits.

14. Debtor returned to his office and prepared the affidavits and mailed said affidavits to each witness. Upon receipt of the prepared affidavits from Debtor, each witness independently contacted Debtor to inform him that the contents of the prepared affidavits was untrue and that the content of

the affidavits was not what they had related to Debtor in their face-to-face meeting at the restaurant.

15.    Thereafter, Debtor did not communicate with either witness again concerning the affidavits.

16.    Thereafter, Debtor forged the names of each of these two witnesses, separately on two separate affidavits and notarized each forged and false affidavit with his own signature and his own notary stamp, (see, forged affidavits, Exhibit "B"), and submitted them to the Federal Court Judge with his opposition to the summary judgment motion.

17.    Subsequently, each of these witnesses was interviewed in or about October of 2002 and each separately provided a sworn statement that their signatures on the false affidavits were forged; that they had informed Debtor that the affidavits he prepared for them were incorrect and they could not sign them; and in the case of Ms. Edreira, that the forged affidavit had in fact misspelled her first name, that her first name is "Teresa", not "Theresa" and that she has never signed her first name with an "h", (Exhibit "C").

18.    Subsequent to the submission of the motion for summary judgment to the Federal Court, the aforesaid employment discrimination case came up for trial. Each of the witnesses, Ms. Tatzel and Ms. Edreira were subpoenaed to testify at trial by the Debtor.

19.    When Debtor realized that Ms. Tatzel and Ms Edreira were in Federal Court on the day of trial to testify and that they would likely be cross-examined by defense counsel with the false affidavits, he sent them home.

20.    Since Debtor could not try the aforesaid employment discrimination case for his clients, Forrest and Steibel, because he could not put his key witnesses on the stand knowing that the falsity of the affidavits would be revealed, he pleaded with Forrest and STEIBEL to accept a small settlement offer.

21.    In order to further conceal his aforesaid fraudulent acts, and to conceal his violation of

ethical and disciplinary rules of the courts of the State of New York and the committee on character and fitness of an attorney to continue to hold a license to the practice of law in the State of New York, debtor promised Forrest and Steibel that he would forego his claim to a contingent attorney's fee on the recovery obtained in the aforesaid employment discrimination action.

22.     Due to Debtor's fraudulent and intentional acts, plaintiffs, Forrest and Steibel, were damaged in that their claim based upon employment discrimination was significantly destroyed.

23.     Plaintiffs refused to participate or assist in debtor's scheme to conceal his fraudulent and unethical acts and sued him for legal malpractice in State Supreme Court, Bronx County, under Index # 17111/02.

24.     Based upon the foregoing, Debtor may not extinguish the claim of plaintiffs, Forrest and Steibel pursuant to § 523(a)(4) and 523 (a)(6) of the Bankruptcy Code.

25.     Thereafter, debtor appeared in State Supreme Court, Bronx County in the aforesaid legal malpractice action against him and maintained his entitlement to a contingent attorney's fee in the aforesaid employment discrimination action.

26.     Thereafter, debtor was disbarred by the Appellate Division, First Department of the State of New York for multiple violations of ethical considerations and disciplinary rules, including misuse of clients' escrow funds.

27.     Debtor, Bressler was first suspended from the practice of law, [see, *In re Bressler*, 3 A.D. 3d 71 (1st Dept. 2004)], for "intentionally mislead(ing) a client", "multiple false statements to his client to conceal the fact he neglected the file the appropriate paperwork", "neglect of two other client matters resulting in dismissal of the clients' complaints", "in one of those cases the judge sanctioned (the Debtor) respondent and the client for failure to comply with discovery, resulting in a judgment against both respondent and the client. Respondent did not inform the client of this

judgment", for "dishonesty, fraud, deceit and misrepresentation" and "failing to maintain client funds in a special account"; and, subsequently his name stricken from the roll of attorneys [see, *In re Bressler*, 5 A.D. 3d 47 (1st Dept. 2004)], as the Court found based upon his substantial admission under oath that he had committed professional misconduct and other uncontested evidence of misconduct, including neglect of client matters, misrepresentations to clients and failing to deposit client's money into escrow accounts.

28. Thereafter, debtor appeared in State Supreme Court, Bronx County in the aforesaid legal malpractice action and offered to forego his claim to a contingent attorney's fee in the aforesaid employment discrimination action.

29. Thereafter, debtor filed his petition under Chapter 7 in this court and did not list his claim for a contingent fee in the aforesaid employment discrimination action.

30. Prior to and during the pendency of the legal malpractice action, plaintiffs herein requested the debtor to provide them with true and complete copies of their files from the employment discrimination action.

31. Debtor has consistently refused to provide plaintiffs with true and complete copies of their files.

32. Plaintiffs were entitled to true and complete copies of their files under multiple sections of State Law and under sections of disciplinary rules.

33. Debtor gave to plaintiffs certain file materials and fraudulently maintained that the materials he gave were true and complete.

34. Said materials given by debtor were not true and complete.

35. Plaintiffs went to the clerk of the court where the aforesaid employment discrimination action was filed and obtained certain copies of other portions of their files, including copies of the

fraudulent affidavits referred to above, which had secreted from plaintiffs, and which had been filed by the debtor with that court and which debtor had consistently maintained did not exist.

36.     Thereafter, plaintiffs brought this discrepancy to debtor's attention, but he fraudulently and falsely denied that he had not already turned over all of plaintiff's file materials.

37.     Specifically, amongst other things, debtor continued to refuse to turn over the fraudulent affidavits which he caused to be submitted to the court in the underlying employment discrimination action.

38.     When the debtor was the acting as the attorney for the plaintiffs, they relied upon his representations regarding the handling of the aforesaid employment discrimination action and his ability and intention to honestly and without fraud or misrepresentation handle any monies recovered in that matter.

39.     The representations made by the debtor in connection with the contingency fee were materially false and the plaintiffs were damaged by their justifiable reliance on those representations.

40.     Pursuant to §523(a)(6) of the Bankruptcy Code, the Debtor willfully and maliciously caused damage to the plaintiffs' employment discrimination claims by submitting falsified affidavits which he notarized.

41.     Pursuant to §523(a)(4) of the Bankruptcy Code, the Debtor caused damage to the plaintiffs' employment discrimination claims by making false representations and/or committing actual fraud.

42.     Accordingly, the plaintiffs' claims against the Debtor for legal malpractice described hereinabove are presumed to be non-dischargeable pursuant to the Bankruptcy Code.

43.     After the date of filing of the Chapter 7 Petition by the Debtor, he gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage

-6-

for acting or forbearing to act in a common plan and scheme with one, Lila Ayers, an attorney and former paramour of the debtor, with an office for the practice of law at the same address and location which the debtor formerly held out as his professional office.

44.    In order to defraud creditors and this Court, and in order to finance his personal lifestyle and meet his personal expenses, debtor has participated in a scheme and plan with Lila Ayers and continued to use and dissipate estate assets with the intent to hinder, delay and defraud creditors of the Debtor, including , the plaintiffs, Forrest and Steibel, as well as the Chapter 7 Trustee who has been charged with custody of the property of the estate.

45.    More particularly, despite the filing of the Chapter 7 Petition, the aforesaid fraudulent scheme and plan involves having Lila Ayers pay for certain personal liabilities and debts of Debtor which were not listed on the Debtor's Schedules and therefore those schedules are incomplete and inaccurate.

46.    The debtor has made false statements under oath concerning the estate.

47.    These efforts described above evidence the intent by the Debtor to hinder, delay and defraud his creditors.

48.    By the foregoing, the Debtor has liquidated, transferred, removed or concealed, or has permitted to be liquidated transferred, removed or concealed, certain assets both within one year prior to filing his petition under Chapter 7 and after the filing of his petition, with the intent to hinder, delay and defraud his creditors and the bankruptcy estate, so as to warrant denial of the Debtor's discharge under §§727(a)(2)(A) and 727(a)(2)(B) and 727(a)(3) and 727(a)(4)(A) and 727(a)(4)C) and 727(a)(4)(D) of the Bankruptcy Code.

49.    The Debtor has failed to keep or preserve information, documents, records and papers from which the Debtor's financial condition or business transactions might be ascertained.

50. More particularly, in his Amended Schedule J the Debtor has listed monthly expenditures of $2,622.00, but only lists available income of $2,144.00, (Exhibit "D" attached hereto). The Debtor has failed to provide records or documentation or to explain or produce any documents to identify the source of the additional sums to meet the Debtor's expenses on a monthly basis which he must receive in income in order to meet his current monthly expenses.

51. As a result of the foregoing, the Debtor has knowingly and fraudulently, in or in connection with the case, made false oaths or accounts as set forth in his Bankruptcy Schedules and Statements of Affairs, and withheld from the Chapter 7 Trustee necessary information relating to the Debtor's property or financial affairs, thereby warranting denial of the Debtor's discharge under §727(a)(4)(A) and §727(a)(4)(D) of the Bankruptcy Code.

52. The Debtor files as a single person, unmarried, yet lists child support as an obligation in the amount of $600.00 per month, (see, Amended Schedule E, listing a child, one Achazin M. Ross, born January 24, 2006. The infant does not have the debtor's name, the debtor has declared that he is unmarried, there is no order of filiation or order for child support payments attached to the schedules).

53. In the short period of time between filing the original Schedule J and the Amended Schedule J, Debtor states that his telephone bill went up $20 per month, his cable T.V. bill increased $45 per month, he incurs regular maintenance and repairs of $25 per month to his rental apartment, (which would be the landlord's responsibility, not his),and his child support payments increased $100 per month.

54. The mother and child do not reside with the Debtor.

-8-

55.     When questioned, the Debtor was unable to identify any financial institution or bank account into which either his pre-petition income or his current income was deposited. Nor was there any statement by Debtor as to the manner of transmittal of payment for rent, utility, cable T.V. or other regular monthly expenses, or any statement as to how he negotiates his pay check or whether he deposits same into any bank account.

56.     Debtor lists his pre-petition income for the year 2005, (Statement of Financial Affairs at sec. 1, as $24,750), but does not list any bank accounts in his name in the past one year before the bankruptcy was filed.

57.     The Debtor does not list any savings accounts, (Schedule B, sec. 2).

58.     When questioned, the Debtor was unable to account for, or provide documentation as to the winding up of his professional financial affairs after his disbarment from the practice of law and where the cases of those clients which he was still handling were transferred and what financial arrangements were made for payment to him of contingency or other legal fees to him.

59.     As demonstrated by the foregoing, the Debtor has failed to keep or preserve information, books, documents, records and/or papers from which the Debtor's financial condition or former professional transactions might be ascertained, so as to warrant denial of the Debtor's discharge under §727(a)(3) of the Bankruptcy Code.

WHEREFORE, Plaintiffs, Forrest and Steibel, pray that this Court deny the Debtor's bankruptcy discharge, together with such other and further relief as the Court may deem just and proper in the premises.

Dated: New York, N.Y.
November 10, 2006

Paul H. Maloney 2676
Maloney & Letowsky
Attorneys for Plaintiffs, William Forrest and
Shawn Steibel
60 E. 42nd Street, Suite 3403
New York, N.Y. 10165
Telephone: (212) 213-0700
Fax: (212) 213-0711

# ATTORNEY'S VERIFICATION

Paul H. Maloney, Esq., an attorney duly admitted to practice in the State of New York, affirms the truth of the following ~~statement pursuant to~~ :

I am an attorney of the firm of MALONEY & LETOWSKY, ESQS., attorneys for the plaintiffs in the within action; I have read the foregoing SUMMONS and COMPLAINT SEEKING DENIAL OF DISCHARGE and/or DETERMINATION OF DISCHARGEABILITY OF DEBT and know the contents thereof; the same is true to my own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

The reason this verification is made by your affirmant and not by the plaintiff(s) is that the plaintiff(s) are not within the County where affirmant maintains his office.

The grounds of affirmant's belief as to all matters not stated upon affirmant's knowledge are from files, investigation and information furnished.

Dated: New York, New York
November 10, 2006

_Paul H. Maloney_

Paul H. Maloney, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

In RE: MICHAEL ROY BRESSLER                    CASE No.06-11897

-------------------------------------------------------------------------X

WILLIAM FORREST and SHAWN STEIBEL,

        Plaintiffs,                   **SUMMONS**

                        Adv. Pro. No.

       - against -

MICHAEL ROY BRESSLER,

        Defendant.
-------------------------------------------------------------------------X

TO THE ABOVE NAMED DEFENDANT:

     YOU ARE HEREBY SUMMONED to answer this complaint in this action and to
serve a copy of your answer on the Plaintiffs' attorneys within 20 days after the service of
this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and in case of default for the relief demanded in the complaint.

Dated: New York, New York
November 10, 2006

                         Yours etc,

                         PAUL H. MALONEY, ESQ. 2676
                         MALONEY & LETOWSKY
                         Attorneys for plaintiffs, Forrest and Steibel
                         60 East 42nd Street, Suite 3403
                         New York, New York 10165
                         (212) 213-0700

DEFENDANT'S ADDRESS
Michael Roy Bressler
528 East 85th Street
Apt. 5D
New York, N.Y. 10028

RECYCLED

**Michael R. Bressler**
Attorney at Law
67 Wall Street, Suite 2411
New York, NY 10005

Tel: (212) 861-0090
Fax: (212) 737-5537

August 20, 1997

Mr. Shawn C. Steiebel
514 Lowell Street
Westbury, NY 11590

Mr. William G. Forrest
403 Southside Avenue
Freeport, NY 11520

**Re. Title VII Actions against Northern Intelligence Agency, Inc., et. al.**

Dear Messrs. Steiebel and Forrest:

You have agreed to retain Jacob Rollings, Esq., Janet Pitter, Esq., and Michael Bressler, Esq. as your attorneys in your employment discrimination action against your employer, Northern Intelligence Agency, Inc ("Northern") and other named individuals associated therewith. Our fee for this representation shall be thirty-three-and-one-third percent (33⅓%) of your final recovery against all defendants; provided this recovery is obtained through settlement or through motion practice. If this matter should be tried, our fee shall be forty percent (40%) of your recovery against all defendants.

You further agree to pay all costs and fees associated with our representation. Such costs shall include, but are not limited to: court fees, process service, car fare, long distance phone calls, faxes, stenographers, expert witnesses, etc. You agree to pay within the next week $2,000 ($1,000 each) to cover the initial expenses.

Should you wish to fire us as your attorneys before final disposition of this matter you agree to compensate us at a rate of $200 per hour for the time expended in this representation. We shall keep an internal record of the time put into the matter for this purpose. Should we be unable to represent you for whatever reason and must withdraw as your attorneys for whatever reason, our compensation shall be $0.00. However, you agree to fully compensate us for all outstanding expenses, should there be any at the time of our withdrawal.

All proposed settlements will be discussed with you. Any final settlement must be approved in writing by both of you. If a settlement is reached all outstanding expenses shall be deducted from the settlement payment before any monies are

distributed.

This is the full and only agreement between us.

Very truly yours,

Michael R. Bressler

Janet Pitter

Jacob Rollings

Acknowledged and agreed:

Shawn C. Stiebel

William Forrest

RECYCLED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

WILLIAM FORREST and
SHAWN STIEBEL,

                    Plaintiffs,

        -against-

NORTHERN INTELLIGENCE AGENCY,

                    Defendant.
-------------------------------------------------X

97 Civ. 5359 (JS)(ETB)

**AFFIDAVIT**

SOUTHERN DISTRICT OF NEW YORK:

THERESA MARIE EDREIRA, being duly sworn, deposes and says:

1.      I am over eighteen years of age.  I am not a party to this action.  I reside in Nassau County, NY.

2.      I was employed by Northern Intelligence Agency ("NIA") from March 1990 until June 1991 as an investigator.  I worked in the surveillance and trial prep departments.

3.      I am an African American woman.  There were two other blacks on the job with me, William Forrest and Bobby Jones.  Both Bill and Bobby complained about their treatment, i.e. that they were not getting enough work while most white employees did.

4.      When I was first hired, Bill helped train me.  It was obvious he knew exactly how to do the job and everyone on the job respected Bill's abilities.

5.      Most of my work assignments were in bad areas in or near housing projects.

6.      In June 1991, I was laid off.  The management told me there was not enough work for me.  I begged Charlie, the head of the Trial Preparation Department, to

give me work because I was not getting enough. However, about one week before I was hired, Northern hired Helen in the surveillance department. Obviously, Helen, a white woman, was hired to take my place.

7. I was unemployed for one year before finding another position. I was forced to give up my own apartment and move in with my parents.

8. My experience with NIA demonstrates a pattern of discrimination on the basis of race.

Theresa Marie Edreira

Sworn to September 15, 1999

MICHAEL R. BRESSLER
Notary Public, State of New York
No. 02BR5051001
Qualified in New York County
Commission Expires October 23, 19___

----------------------------------------------------X

WILLIAM FORREST and
SHAWN STIEBEL,

                    Plaintiffs,                      **AFFIDAVIT**

    -against-

NORTHERN INTELLIGENCE AGENCY,

                    Defendant.

----------------------------------------------------X

SOUTHERN DISTRICT OF NEW YORK:

      HELEN TATZEL, being duly sworn, deposes and says:

    1.      I am over eighteen years of age. I am not a party to this action. I reside in Suffolk County, NY.

    2.      I was employed by Northern Intelligence Agency ("NIA") from April 1990 until July 1997 as an investigator. I worked in the surveillance department.

    3.      One of the best things about working for NIA was the opportunity to work alongside plaintiff William Forrest. When we did surveillance work together, Bill always paid attention to what was going on and always came up with creative ways of collecting information. I might add he was also fun to work alongside, he kept me amused when we were alone maintaining surveillance. This quality was very important on long assignments when we needed to stay alert.

    4.      The vast majority of my assignments were on Long Island, unlike Bill who often had to go to bad areas of New York City.

    5.      Given this, I found that the treatment of Bill by Northern was totally unfair. I would constantly ask Ronald Perrota, Partner and Manager at NIA, if I could take Bill

along on a given assignment. Ron would constantly say, "No, Bill has too much to do already. He has enough." However, when I checked with Bill if this was the case, he said he did not have enough work. In fact, Bill always complained he was not making enough at Northern and that he was only getting flat rate assignments. Bill told me because of this he was forced to moonlight.

6.    I further found that employees with less experience and ability, e.g. Ellen McGann and Dominique were getting good assignments and were always working.

7.    Another thing that I noticed was that Ron also would make racial jokes about Bill. For instance, I vividly recall one instance where Bill came into the office after shaving his head and Ron said, "Look, there is black 'Mr. Clean.'"

8.    In sum, I firmly believe that Mr. Forrest was subject to different and worse terms and conditions of employment solely because of his race.

_____
Helen Tatzel

Sworn to September 15, 1999

MICHAEL R. BRESSLER
Notary Public, State of New York
No. 02BR5051001
Qualified in New York County
Commission Expires October 23, 19_99_

RECYCLED

# AFFIDAVIT of TERESA-MARIE EDREIRA

STATE OF NEW YORK      )
                               ) ss.:
COUNTY OF NEW YORK    )

      **Teresa-Marie Edreira**, being duly sworn, deposes and says;

1.     I reside at 20 Wendell Street, Apt. # B-21, Hempstead, New York 11550.

2.     I am not a party to the within action.

3.     I was formerly employed by Northern Intelligence Agency. During the time I was employed there, I was acquainted professionally with, William Forrest, the plaintiff herein, who also worked there. Around the time I left Northern Intelligence Agency, another individual came to work there, Shawn Steibel.

4.     I became aware that Mr. Forrest and Mr. Steibel had commenced a lawsuit in the federal court against the Northern Intelligence Agency alleging racial discrimination in the workplace. Mr. Forrest and Mr. Steibel are of African-American heritage.

5.     One evening I was asked to meet with the attorney representing Mr. Forrest and Mr. Steibel, and I did so. That attorney was Michael Bressler. The meeting took place at a T.G.I.F. restaurant in Westbury, on Merrick Road, in Long Island. At the meeting I was interviewed by Mr. Bressler as to the employment practices of Northern Intelligence Agency. There was a tall, thin, black female with Mr. Bressler. I was under the impression that she worked with him. The interview lasted approximately half an hour to forty-five minutes.

6.     Subsequent to that interview, I received an affidavit from Mr. Bressler which had been prepared for me to sign. Upon receiving the affidavit, I telephoned Mr. Bressler's office to inform them that there were misstatement contained in the document which was prepared for me, and

RECYCLED

In re ___Michael R. Bressler___,     Case No._____
       Debtor                                    (if known)

# SCHEDULE J – CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ 1,330.00 |
| a. Are real estate taxes included? Yes _____ No ✓ | | |
| b. Is property insurance included? Yes _____ No ✓ | | |
| 2. Utilities: a. Electricity and heating fuel | | $ 60.00 |
| b. Water and sewer | | $ _____ |
| c. Telephone | | $ 100.00 |
| d. Other ___Cable___ | | $ 60.00 |
| 3. Home maintenance (repairs and upkeep) | | $ _____ |
| 4. Food | | $ 200.00 |
| 5. Clothing | | $ 30.00 |
| 6. Laundry and dry cleaning | | $ 50.00 |
| 7. Medical and dental expenses | | $ _____ |
| 8. Transportation (not including car payments) | | $ 87.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ 30.00 |
| 10. Charitable contributions | | $ _____ |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renter's | | $ _____ |
| b. Life | | $ _____ |
| c. Health | | $ _____ |
| d. Auto | | $ _____ |
| e. Other _____ | | $ _____ |
| 12. Taxes (not deducted from wages or included in home mortgage payments) (Specify) _____ | | $ _____ |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | | $ _____ |
| b. Other _____ | $ _____ | |
| c. Other _____ | $ _____ | |
| 14. Alimony, maintenance, and support paid to others | $ _____ | |
| 15. Payments for support of additional dependents not living at your home | $ 500.00 | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ _____ | |
| 17. Other _____ | $ _____ | |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | | $ 2,427 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:
_____

20. STATEMENT OF MONTHLY NET INCOME

| | |
|---|---|
| a. Total monthly income from Line 16 of Schedule I | $ 2,144.07 |
| b. Total monthly expenses from Line 18 above | $ 2,427 |
| c. Monthly net income (a. minus b.) | ($ 283 ) |

No: 06-11897

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: MICHAEL ROY BRESSLER

WILLIAM FORREST and SHAWN STEIBEL,

Plaintiffs,

-against-

MICHAEL ROY BRESSLER,

Defendant.

## SUMMONS AND COMPLAINT SEEKING DENIAL OF DISCHARGE AND/OR DETERMINATION OF DISCHARGEABILITY OF DEBT

**MALONEY & LETOWSKY**
**Attorneys for Plaintiff(s)**
**60 East 42nd Street, Suite 3403**
**New York, New York 10165**
**(212) 213-0700**