**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

For Publication

|  |  |  |
|---|---|---|
| In re | : | Case No. 06-11897 (AJG) |
|  | : |  |
| MICHAEL ROY BRESSLER, | : | Chapter 7 |
|  | : |  |
| Defendant. | : |  |
| _____x | : |  |
| WILLIAM FORREST and SHAWN STEIBEL, | : |  |
|  | : | Adv. Pro. No. 06-01908 (AJG) |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| MICHAEL ROY BRESSLER, | : |  |
|  | : |  |
| Defendant. | : |  |
| _____x | : |  |
| STEVEN STRUM, | : |  |
|  | : | Adv. Pro. No. 07-01703 (AJG) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| MICHAEL ROY BRESSLER, | : |  |
|  | : |  |
| Defendant. | : |  |
| _____x | : |  |

**OPINION, AFTER TRIAL, REGARDING OBJECTIONS TO DISCHARGE
PURSUANT TO SECTION 727 OF THE BANKRUPTCY CODE AND
OBJECTIONS TO DISCHARGEABILITY OF CERTAIN DEBTS PURSUANT
TO SECTION 523.**

A P P E A R A N C E S

MALONEY & LETOWSKY, ESQS.
Attorneys for Plaintiffs William Forrest and Shawn Steibel
60 East 42nd Street, Suite 3403
New York, NY 10165

Paul H. Maloney, Esq.

STEVEN STRUM
*Pro Se* Plaintiff
2155 Paulding Avenue, Apt. 1G
Bronx, NY 10462

MICHAEL BRESSLER
*Pro Se* Defendant
528 E. 85th Street, Apt. 5D
New York, NY 10028

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

## Introduction

The Plaintiffs William Forrest ("Forrest") and Shawn Steibel ("Steibel") brought

an adversary proceeding against Debtor Michael Roy Bressler ("Bressler," "Debtor," or

the "Defendant") seeking an exception to and a denial of Bressler's discharge in Chapter

7 pursuant to sections 523 and 727 of Title 11 of the United States Code (the

"Bankruptcy Code").  Plaintiff Steven Strum ("Strum," together with Forrest and Steibel,

the "Plaintiffs") also brought an adversary proceeding seeking an exception to and a

denial of Bressler's discharge in chapter 7 pursuant to sections 523 and 727.  A trial on

the merits was held on April 14, 2008.  For the reasons stated below, the Defendant's

discharge is denied under section 727(a)(4).  Although denying Defendant's discharge

under section 727(a)(4) provides full relief to the Plaintiffs, the Court, for completeness's

sake, will also address the Plaintiffs' arguments that discharge should be denied pursuant

to section 727(a)(2) and that a certain debt should be found to be nondischargeable

pursuant to section 523.  This opinion constitutes the Court's findings of fact and

conclusions of law under Federal Rule of Civil Procedure 52, made applicable herein by
Bankruptcy Rules 7052 and 9014.

### Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28
U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge
Robert J. Ward dated July 10, 1984.  Determinations "as to the dischargeability of
particular debts," 28 U.S.C. § 157(b)(2)(I), and "objections to discharges," 28 U.S.C. §
157(b)(2)(J), are core proceedings.

### Background

The background of this case has been discussed in a prior opinion of March 10,
2008 (the "March 10 Opinion") in the Forrest and Steibel adversary proceeding.[1]  (ECF
Doc. No. 22 in Adv. Pro. No. 06-01908.)  As a result, only the most pertinent facts will
be discussed.

Bressler was formerly a licensed attorney in New York.  Separately, Forrest and
Steibel, and Strum hired Bressler to represent them.  Bressler negotiated a settlement on
Forrest and Steibel's behalf while he acted as their attorney, and the parties agree that a
$10,000 legal fee is currently being held in escrow by Forrest and Steibel's current
attorney.  Both Forrest and Steibel, and Strum, filed suits against Bressler in 2002,
alleging malpractice, among other claims.  Bressler counterclaimed against Forrest and

---

[1] Bressler has moved for reargument of the March 10 Opinion.  (ECF Doc. No. 23, in Adv. Pro. No. 06-01908.)  In that motion, the Debtor took issue with the entire Background section in general of that opinion and certain statements in it in particular.  The Debtor claims that he never admitted that he "forged" a witness's signature to an affidavit.  The Court will modify that opinion to reflect the findings more accurately, and notes that it used the term in the plain meaning sense and not in reference to any statutory definition of the term.  That opinion will be changed to read that "Bressler signed an affiant's name to an affidavit, allegedly with the affiant's oral permission, permission which the affiant later declared never giving."  The other thrusts of the motion for reargument, relating to the Debtor's records and the student loans, will be addressed in this opinion.

Steibel, asserting that he is entitled to the $10,000 legal fee.  Strum obtained a default

judgment against Bressler in New York Supreme Court, Bronx County in the amount of

$930,921.  The judgment for Strum was entered on October 26, 2004.  Forrest and

Steibel's suit is pending, and the section 362 stay was lifted to allow it to proceed.

On January 6, 2004, Bressler was suspended from practicing law in New York

based on his substantial admissions under oath that he had committed professional

misconduct and other uncontested evidence of misconduct.  *See In re Bressler*, 770

N.Y.S. 2d 303 (1st Dep't 2004).  Thereafter, the First Department's Disciplinary

Committee moved for an order, pursuant to 22 NYCRR 603.11, accepting Bressler's

resignation from the practice of law and striking his name from the roll of attorneys.

Bressler acknowledged to the Department's Disciplinary Committee that there were

multiple instances of professional misconduct alleged against him including the neglect

of six legal matters entrusted to him, misrepresentations to five separate clients, and

failing to deposit client funds into a special account.  Bressler further acknowledged that

he could not successfully defend himself on the merits against these charges.  The

Appellate Division, First Department, thereafter disbarred Bressler on March 23, 2004.

*See In re Bressler*, 774 N.Y.S.2d 36 (1st Dep't 2004).  Neither proceeding publicly

identified or distinguished the Plaintiffs as the clients involved in Bressler's actions.

Bressler filed a voluntary petition (the "Petition") for relief under Chapter 7 of the

Bankruptcy Code on August 15, 2006.  (ECF Doc. No. 1 in main case, No. 06-11897.)

Plaintiffs Forrest, Steibel, and Strum were listed in a schedule[2] annexed to

Bressler's Petition as holding unsecured, nonpriority claims.  In the Statement of

---

[2]  The Court hereafter will refer to those schedules annexed to the original Petition as "original schedules"
and will refer to amended schedules as "amended schedules."

Financial Affairs, Bressler listed two pending proceedings:  *Forrest and Steibel v. Bressler and Rollings*, and *Gentile v. Bressler*.  Pursuant to 11 U.S.C. § 341, the first meeting of creditors was held on September 13, 2006 (the "341 Meeting").

In the original Schedule I, Bressler listed monthly net income of $2,144.01.  In the original Schedule J, Bressler listed monthly expenses of $2,427, with $500 listed as a payment for support of additional dependents not living with Bressler.  Bressler, in sum, listed a monthly net income of negative $283.  In the original schedules, Bressler indicated he had no student loan obligations; on the Statistical Summary of Certain Liabilities, Bressler wrote "0" in the box marked "Student Loan Obligations (from Schedule F)."

On August 22, 2006, Bressler filed amended Schedules, A, E, I, and J.  (ECF Doc. No. 11 in main case, No. 06-11897.)  The amended Schedule J showed an increase in Bressler's monthly expenditures of $195, while his income remained the same.  As an expenditure, Bressler indicated he spent $20 monthly for recreation and the like. (Amended Schedule J, # 9.)  At that point, Bressler's stated monthly net income was minus $478.  In the amended schedules, Bressler again indicated he had no student loan obligations.   In the amended schedules, Bressler indicated he had monthly domestic support obligations of $600, and that Geraldine Ross was a creditor to whom he owed child support.

On September 1, 2006, Bressler filed an amended Schedule F and an amended Summary of Schedules.  (ECF Doc. No. 14.)  Amended Schedule F listed as an additional creditor, Sprint PCS, as holding an unsecured nonpriority claim in the amount of $190.

On November 13, 2006, Forrest and Steibel commenced an adversary proceeding against Bressler, seeking an exception to and denial of discharge pursuant to sections 523 and 727, respectively, of the Bankruptcy Code.  In their complaint, Forrest and Steibel sought an exception to the discharge of a certain debt under sections 523(a)(4) and 523(a)(6) and denial of discharge under sections 727(a)(2), 727(a)(3), and 727(a)(4) of the Bankruptcy Code.

On December 21, 2006, the Court granted Strum's request for an extension of time to file a complaint objecting to Bressler's discharge or the dischargeability of a debt until sixty days after the deposition of witness Lila Ayers ("Ayers").  Strum alleged in his request for an extension that the deposition of Ayers was necessary for him to accurately prepare his adversary complaint objecting to discharge.

Strum filed an adversary proceeding on April 17, 2007.  Strum objected to Bressler's discharge based on sections 727(a)(2) and 727(a)(4), and objected to the dischargeability of certain debts under section 523(a)(6) of the Bankruptcy Code.

Bressler filed further amendments to his schedules.  On March 12, 2007, Bressler filed an amendment listing additional creditors.  In addition, Bressler listed his average monthly income at $2,840 and his average expenses as $2,829 in the amended Schedules I and J of March 12, 2007.  In amended Schedule J, Bressler indicated he spent $140 monthly on recreation and the like, up from $20 from August 22, 2006 filing.  Bressler again indicated on the amended Statistical Summary that he had no student loan obligations.

Forrest and Steibel filed a Motion for Summary Judgment under section 727 on January 29, 2008.  Strum filed a motion to join the Motion for Summary Judgment on

February 6, 2008.  Bressler filed an opposition on February 11, 2008.  The Court held a

hearing on the Motion for Summary Judgment on February 13, 2008.

At the hearing on February 13, 2008, Bressler disclosed for the first time that he

also had outstanding amounts due on his student loans.  His explanation for not listing

them in the original schedules or any amended schedules was that he did not think he had

to because the loans are non-dischargeable.

The Court issued its Opinion and Order, Granting, In Part, and Denying, In Part,

Plaintiffs' Motion for Summary Judgment on March 10, 2008.  A trial was held on April

14, 2008.  At the trial, counsel for Forrest and Steibel called one witness, Todd

Strassberg, an attorney who previously represented Strum in his efforts to collect his

judgment from Bressler.  Strum and Bressler each indicated orally at that trial's start that

he had one witness to call.  Bressler indicated he would call Geraldine Ross, the mother

of the child to whom Bressler pays support obligations, presumably to address an issue

raised about Bressler's child support obligations.  Strum indicated he would call a Mr.

Matrodoni (phonetic spelling), a name unfamiliar to the Court from the prior proceedings.

Counsel for Forrest and Steibel objected that Bressler did not supply a list of witnesses in

advance of trial, as directed by the Court.  The Court sustained the objection of Forrest

and Steibel and ruled that Bressler could not call a witness since he had not complied

with the Court's directive to file a list of witnesses.  The Court rejected Strum's request

to call a witness for the same reason.  Neither Strum nor Bressler complied with the

Court's directive to file a list of witnesses prior to the trial and provided no basis to

relieve either of them of that obligation.

**Discussion**

A.  Section 523

Strum objects to granting Bressler a discharge under section 523(a)(6) of the

Bankruptcy Code.  Although Forrest and Steibel also seek a denial of discharge under

sections 523(a)(4) and 523(a)(6) in their adversary complaint, those plaintiffs have not

pursued that avenue of the relief with the Court because of the Court's prior rulings that

their state court malpractice claim should conclude before the Court addresses their

section 523 causes of action regarding any debt that may arise from that proceeding.  The

Court lifted the automatic stay to allow that action to proceed.

Section 523(a)(6) provides an exception to discharge for debts arising from

"willful and malicious injury by the debtor to another."  *See Ball v. A.O. Smith Corp.*, 451

F.3d 66, 69 (2d Cir. 2006).  Neither "willful" nor "malicious" is defined in the Code.  *See*

*Strauss v. Strauss (In re Strauss)*, Bankr. No. 05-24910, Adv. No. 06-8229, 2006 WL

2583645 (Bankr. S.D.N.Y. 2006).  The terms, however, are distinct and should not be

joined together into one "'amorphous standard.'"  *See Yash Raj Films (USA), Inc. v.*

*Akhtar (In re Akhtar)*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007) (quoting *Barclays*

*American/Business Credit v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985)).

The term "willful" is generally not controversial, and generally means "a

deliberate or intentional injury, not merely a deliberate or intentional act that leads to

injury."  *In re Strauss*, 2006 WL 2583645, at *2 (citing *Kawaauhau v. Geiger*, 523 U.S.

57, 61 n.3 (1998).  The requirement may be satisfied "if the debtor had actual knowledge

that he or she was violating the law and the intent to bring about injury."  *In re Akhtar*,

368 B.R. at 127-28.  "Mere negligence does not constitute 'willful and malicious'

conduct." *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005) (citing *Kawaauhau*, 523 U.S. at 61-62).

The Second Circuit has held that "malicious" for the purpose of section 523(a)(6) includes actual and constructive malice. *See Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87-88 (2d Cir. 1996).   Furthermore, personal animus is not necessary. *See id.* ("The term 'malicious' means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.").   "[T]he element of malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor." *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998).  Malice may be found where a debtor has breached a statutory duty "willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstances to warrant the denial of a discharge." *Id.* at 144.

A court should look to the totality of the circumstances to determine malice. *See id.*  Such a review of the case's circumstances is perhaps made even more necessary due to the "surprisingly little judicial and scholarly commentary discussing the degree or nature of 'wrongfulness' that constitutes 'malice' under" section 523(a)(6). *Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 139 (Bankr. E.D. Pa. 2008).

Here, the only evidence Strum presented to support a denial of discharge under section 523 was his adversary complaint and its attachments, such as the state court complaint and his judgment against Bressler.  In his adversary complaint, Strum alleges that the state court made a finding of "deceipt" [sic] in ruling that Bressler's conduct

violated section 487 of New York's Judiciary Law.[3]  Strum claims that the "finding of

'Deceipt' [sic] is *res judicata*."

    The Court assumes Strum means collateral estoppel rather than *res judicata*.[4]

Collateral estoppel can apply to discharge exception proceedings pursuant to section

523(a) of the Code.  *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  In the instant

matter, the collateral estoppel effect of a default judgment is governed by New York law.

*See Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 505 (Bankr. S.D.N.Y. 1999).  "New

York gives collateral estoppel effect to issues 'necessarily decided' by the default

judgment, i.e., matters essential to sustain the judgment."  *Id.*  As the party seeking the

benefit of collateral estoppel, Strum has the burden to demonstrate that the decisive issue

was resolved in a prior action involving Bressler.  *See Evans v. Ottimo*, 469 F.3d 278,

281 (2d Cir. 2006).

---

[3] Under Section 487, entitled "Misconduct by attorneys" –

    An attorney or counselor who:
    (1)    Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive
           the court or any party; or,
    (2)    Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or
           allowance for or on account of any money which he has not laid out, or becomes answerable for, is
           guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law,
           he forfeits to the party injured treble damages, to be recovered in a civil action.

[4] The Court assumes Strum means "collateral estoppel" instead of *res judicata*, a distinction that can elude
even experienced legal professionals, and will treat the submission as such.  The Court notes that the state
court action against Bressler, for claims based on legal malpractice, is a different type of cause of action
than the adversary proceeding against Bressler, and that Bressler could not have raised the issue of an
absence of malice in the first action, making *res judicata* inappropriate.  Generally, under *res judicata*, or
claim preclusion, a judgment on the merits in a prior suit bars a second suit involving the same parties
based on the same cause of action for issues that were or could have been raised in the first action.  *See,
e.g., G & T Terminal Packaging Co., Inc. v. Consol. Rail Corp.*, 719 F. Supp. 153, 157-159 (S.D.N.Y.
1989).  Collateral estoppel, or issue preclusion, on the other hand, bars the relitigation of an issue that was
raised, litigated, and decided in a prior proceeding.  *See id.*  "Unlike *res judicata*, . . . collateral estoppel
precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on
a different cause of action."  *Id.*  That theory seems closer to Strum's intentions, and the Court will
accordingly treat it as such.

Several cases have provided guidance on the collateral estoppel effect of a prior court judgment with respect to the malice element of section 523(a)(6).  *See, e.g. Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006); *Jones v. Svreck (In re Jones)*, 300 B.R. 133 (1st Cir. BAP 2003); *In re Ahktar*, 368 B.R. 120 (Bankr. E.D.N.Y. 2007); *In re Strauss*, Bankr. No. 05-24910, Adv. No. 06-8229, 2006 WL 2583645 (Bankr. S.D.N.Y. 2006); *Old Republic Nat'l Title Ins. Co. v. Moskowitz (In re Moskowitz)*, 310 B.R. 21 (Bankr. E.D.N.Y. 2004).

In *Ball,* a 2006, decision, the Second Circuit applied collateral estoppel to preclude a debtor-attorney from contesting his debt that arose from a prior proceeding's sanctions award against him as one for willful and malicious injury under section 523. There, the debtor-attorney, Ball filed suit in a Louisiana federal court on behalf of certain plaintiffs against creditor A.O. Smith Corporation ("A.O. Smith").  In that proceeding, A.O. Smith prevailed at summary judgment and won an award of sanctions against Ball for bringing the suit.  The Louisiana district court ordered Ball to pay the cost of A.O. Smith's defense, an order affirmed by the Fifth Circuit.

Ball then filed for bankruptcy protection in the bankruptcy court of the Northern District of New York.  Both that bankruptcy court and the district court for the Northern District of New York held that the debt was non-dischargeable under section 523(a)(6). The Second Circuit affirmed, finding that collateral estoppel applies to the facts found by the Louisiana district court because those facts were "fully litigated" and "necessary" to that court's decision to impose sanctions, and that those findings "satisfy the Bankruptcy Code's malice requirement."  451 F.3d at 69-70.  One of the findings was that Ball should have known his plaintiffs' claims were "obviously barred."  *Id.* at 70.

In *In re Jones*, the debtor appealed the Bankruptcy Court's determination that the Massachusetts Commission Against Discrimination's ("MCAD") finding of willful and malicious conduct was a sufficient basis to deny dischargeability under section 523(a)(6). The Bankruptcy Appellate Panel of the First Circuit (the "BAP") affirmed that decision, finding that "there was sufficient evidence [in the MCAD's findings] to find that the Appellant's actions were deliberate or intentional and that he did intend to harm or injure the Appellee." 300 B.R. at 140. The BAP found that despite the lack of a malice requirement in the state's sexual harassment statute, the MCAD's finding of sexual harassment "constitutes the requisite injury and is equivalent to a finding of malicious and willful injury under § 523(a)(6)." *Id.* at 141.

In *In re Ahktar*, a bankruptcy court gave collateral estoppel effect to a copyright infringement action by granting the plaintiff's motion for summary judgment on its dischargeability claim under section 523(a)(6). The plaintiff argued before the bankruptcy court that collateral estoppel should apply because "the District Court had already determined in the Copyright Action that the Defendant's 'continuing violations of [the] Plaintiff's copyrights were executed with the requisite willfulness and malice necessary to have this Court declare the resultant debts nondischargeable in Bankruptcy.'" 368 B.R. at 126. The bankruptcy court agreed, finding the elements of collateral estoppel were satisfied in part because the District Court had previously awarded the maximum amount of statutory damages after finding that the Defendant's copyright infringements violated a preliminary injunction and were "wrongful and without just cause or excuse." *Id.* at 134. Eleven months after the District Court has issued a preliminary injunction enjoining the Defendant from such acts the Defendant had

continued to sell unauthorized copies of movies whose copyrights were owned by the Plaintiff. *Id.* at 123-24.

In *In re Strauss*, the Court granted the plaintiff's motion for summary judgment under collateral estoppel based upon a prior state court decision. 2006 WL 2583645, at *1. The state court had found that the debtor had willfully and maliciously dissipated the assets of his marital estate, and secreted funds to deprive his wife and children of those assets. *Id.* at *4-6 ("Justice Nicolai's determination of [the debtor's] willfulness and malice was essential to the final divorce judgment.")

In each of those cases that found section 523's malice requirement to be satisfied by collateral estoppel, the court explained how the debtor's conduct, as found by the trial court, intentionally harmed the plaintiff/creditor, and in each case collateral estoppel applied because the prior court made certain factual findings that satisfied the Code's malice requirement of section 523.

Conversely, where the malice element of section 523 has not been found satisfied through collateral estoppel, the court stressed the lack of a finding by the prior court of malicious conduct. For example, the court in *In re Moskowitz*, held that the state court judgment of conversion against the debtor did not establish malice under section 523. "The decisions in the State Court Actions do not contain specific findings regarding the willfulness or malice of the Defendant because the State Court was not asked to decide those issues. The . . . decision dealt solely with conversion, which does not require a finding of intent on behalf of the defendant." 310 B.R. at 31.

The Court cannot give collateral estoppel effect to Bressler's violation of Section 487 of New York's Judiciary Law to dispose of the issue of his malice under section 523

of the Bankruptcy Code. Strum has not established that the malice of Bressler was decided by the state court in its issuance of the default judgment that Bressler violated New York's section 487. In what is the sum of the state court's relevant findings, that court "ruled that defendant's conduct violated Section 487." (Tr. Ex. 15, Judgment in *Strum v. Bressler*, No. 2002-14425, Supreme Court of N.Y., Bronx Co.). The judgment simply does not provide sufficient detail to support a finding that the issue of malice was decided in that Bressler intended to injure Strum or that Bressler acted "willfully and maliciously" under section 523 of the Bankruptcy Code to cause Bressler's debt to Strum. As such, the current matter is on point with *In re Moskowitz* and differs significantly from the cases discussed above in which the court gave collateral estoppel effect to a prior court's rulings. At best, the state court complaint and subsequent judgment against Bressler, issued on default, could support a showing that Bressler was negligent as to Bressler. But negligence, as stated above, is not sufficient grounds to deny discharge under section 523.

As the prior judgment against Bressler is the extent of the relevant evidence submitted by Strum against Bressler, and because such evidence is not persuasive, section 523 is not a basis to preclude the dischargeability of Bressler's debt to Strum.

B. Section 727(a)(2)

Section 727(a)(2) of the Bankruptcy Code states

> (a) The court shall grant the debtor a discharge, unless-
>   (2) the debtor, with intent to hinder, delay, or defraud a creditor
>   or an officer of the estate charged with custody of property
>   under this title, has transferred, removed, destroyed, mutilated,
>   or concealed, or has permitted to be transferred, removed,
>   destroyed, mutilated, or concealed--
>     (A) property of the debtor, within one year before the date
>       of the filing of the petition; or

14

>            (B)  property of the estate, after the date of the filing of the
>                 petition.

11 U.S.C. § 727(a)(2).

"The exception to discharge in § 727(a)(2)(A) [or (B)] essentially 'consists of two

components: an act (i.e., a transfer or a concealment of property) and an improper intent

(i.e., a subjective intent to hinder, delay, or defraud a creditor).'"  *Adams v. Zembko* (*In re

Zembko*), 367 B.R. 253, 256 (Bankr. D. Conn. 2007) (quoting *In re Kontrick*, 295 F.3d

724, 735-37 (7th Cir. 2002)).

The section precludes a discharge if the debtor (1) with intent to hinder, delay, or

defraud a creditor (2) transfers, removes, destroys, mutilates, or conceals, or has

permitted to be transferred, removed, destroyed, mutilated, or concealed, (3) property of

the debtor (4) within one year of the petition date.  *See, e.g., Doubet, LLC v. Palermo (In

re Palermo)*, 370 B.R. 599, 612 (Bankr. S.D.N.Y. 2007).  The party objecting to

discharge bears the burden of proving the elements required by the statute by a

preponderance of the evidence.  *See, e.g., Pereira v. Gardner (In re Gardner),* --- B.R. ---

-, 2008 WL 857443 at *5, No. 02-43420, Adv. Pro. No. 04-02970 (Bankr. S.D.N.Y. Apr.

1, 2008).  The statutory phrase "hinder or delay" has been construed by several courts "to

mean that the debtor must have an *actual intent to significantly* impair a creditor's

collection efforts."  *Cadle Co. v. Marra (In re Marra)*, 308 B.R. 628, 631 (D. Conn.

2004) (emphasis added).  The Second Circuit's standard under section 727(a)(2) has been

described as "more lenient" to debtors than other jurisdictions, in keeping with the

circuit's liberal construction of section 727.  *Id.* at 630.

Fraudulent intent may be established by circumstantial evidence or by inferences

drawn from the debtor's course of conduct since a debtor would rarely admit that he

actually intended to defraud creditors.  *See Baron v. Klutchko (In re Klutchko)*, 338 B.R.

554, 570 (Bankr. S.D.N.Y. 2005).  "These circumstances can be drawn from several

badges of fraud, including:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between
>     the parties;
> (3) the retention of possession, benefit or use of the property in
>     question;
> (4) the financial condition of the party sought to be charged both
>     before and after the transaction;
> (5) the existence or cumulative effect of a pattern or series of
>     transactions or course of conduct after the incurring of debt,
>     onset of financial difficulties, or pendency or threat of suits by
>     creditors; and
> (6) the general chronology of the events and transactions under
>     inquiry."

*In re Palermo*, 370 B.R. at 612.

In his complaint, Strum alleges that Bressler should be denied a discharge under

section 727(a)(2) because Bressler, *inter alia*, violated a restraining notice, ignored a

subpoena, ignored an income execution served upon him, and transferred property of the

debtor within a year of the Petition by cashing paychecks through Ayers and transferring

cash to Ayers.  The substance of his complaint is that Bressler, pre-petition, avoided the

judgment Strum had obtained against him, and that, both within one year before and after

Bressler filed the Petition, he improperly transferred assets.

At trial, the Plaintiffs mainly relied on the testimony of Todd Strassberg, an

attorney hired by Strum to enforce his judgment against Bressler.  Strassberg testified

about the difficulties in serving Bressler and Bressler's failure to appear for an

"examination."[5]  Strassberg also testified that Bressler violated a state court's restraining

notice by making certain transactions, such as paying rent, and using Ayers to cash his

---

[5]   The Court assumes that Strassberg was referring to a deposition regarding the collection of the judgment.

paychecks.  But based on Strassberg's testimony and the evidence submitted, the Plaintiffs have not proven an actual intent to hinder, delay, or defraud.

The Plaintiffs cite a decision and order from the state court judge that "it appears that movant [Bressler] first evaded personal service for more than three weeks."  (Tr. Ex. 11, July 15, 2006 Decision and Order of Hon. Mark Friedlander, *Strum v. Bressler,* Supreme Ct. of N.Y., Bronx Co. Index No. 0014425/2002.)  The decision and order did not conclusively find that Bressler avoided service of the subpoena, and even if it did, the Plaintiffs have not established that it would establish a transfer or concealment of Bressler's property under section 727(a)(2).  That finding, furthermore, appears only to have been made to refute Bressler's contention that Strum failed to provide an affidavit of service of a subpoena.

The Plaintiffs' other contention, regarding Bressler's use of a money order to pay his rent, does not establish a transfer or concealment of Bressler's property done with the intent to hinder, delay, or defraud under section 727(a)(2).  Bressler testified that his intent, in using money orders to pay his landlord, was to simply pay his rent.  Although the Court has its doubts as to Bressler's explanation regarding his choice of using money orders rather than a checking account,[6] the Plaintiffs have not carried their burden of establishing that his *actual* intent, contrary to Bressler's explanation, was to hinder, delay, or defraud the Plaintiffs.

The use of Ayers to cash his paychecks and as a conduit to pay his gym membership does not establish that Bressler had an actual intent to hinder, delay or defraud.  Compared to other cases where courts have found that the debtor's use of a different bank account precluded discharge, the Plaintiffs have not shown that Bressler

---

[6]  See infra at pp. 31-32

cashed his paychecks through Ayers to hinder or frustrate their attachment efforts, nor have they provided evidence that Bressler transferred property to Ayers. *Cf. Locke v. Schafer (In re Schafer)*, 294 B.R. 126 (N.D. Cal. 2003) (discharge denied in part because debtor admitted that he deposited funds into new bank account to prevent the objecting debtor from attaching them); *Camacho v. Martin (In re Martin)*, 88 B.R. 319 (D. Colo. 1988) (the debtor closed an account that was being garnished by the creditors, transferred funds from that account into bank accounts that he failed to disclose in his petition, and admitted that he changed the business name listed for the account to avoid further garnishment). The established facts bring Bressler's situation closer to those in *Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015 (S.D.N.Y. 1985), in which the court found there was no evidence of a fraudulent intent under section 727(a)(2). There, the debtor's wife cashed the debtor's paychecks through her bank account and returned the funds to him. The court found such conduct to be reasonable under the circumstances and not intended to keep assets from the reach of his creditors. Here, Bressler has testified that his primary motivation of using Ayers's account was to cash his checks and reimburse her for the automatic withdrawals from her account to pay the gym membership. Further, Bressler testified that Ayers did not retain assets of his. The Plaintiffs have not met their burden to show otherwise.

For the above stated reasons, the Plaintiffs' objection to discharge pursuant to section 727(a)(2) is denied.

C.  Section 727(a)(4)

Section 727(a)(4) precludes a discharge if the Debtor –

> knowingly and fraudulently, in or in connection with the case

  (A) made a false oath or account;

  (B) presented or used a false claim;

  (C) gave, offered, received, or attempted to obtain money,
    property, or advantage, or a promise of money, property, or
    advantage, for acting or forbearing to act; or

  (D) withheld from an officer of the estate entitled to possession
    under this title, any recorded information, including books,
    documents, records, and papers, relating to the debtor's
    property or financial affairs.

11 U.S.C. § 727(a)(4).

   The Plaintiffs allege that discharge should be denied pursuant to section

727(a)(4)(A) because of Bressler's alleged false oaths and omissions and because

Bressler fraudulently withheld necessary information from the Chapter 7 trustee relating

to the Defendant's property or financial affairs.

   "It is well established that to prove an objection to discharge under §

727(a)(4)(A), the creditor must prove the following by a preponderance of the evidence:

(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor

knew the statement was false; (4) the debtor made the statement with fraudulent intent;

and (5) the statement related materially to the bankruptcy case." *In re Klutchko*, 338 B.R.

at 567 (quoting *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228

(E.D.N.Y. 2000)).  "A debtor's petition and annexed schedules constitute a statement

under oath for purposes of § 727(a)(4)(A)." *Nof v. Gannon (In re Gannon)*, 173 B.R.

313, 320 (Bankr. S.D.N.Y. 1994).  "Omissions as well as affirmative misstatements

qualify as false statements for Section 727(a)(4)(A) purposes." *Republic Credit Corp. v.*

*Boyer (In re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Conn. 2007), *aff'd*, --- B.R. ----, 2008

WL 819749 (D. Conn. Mar. 27, 2008)

Fraudulent intent under this section "must be shown by actual, not constructive fraud, although a 'reckless indifference to the truth' also suffices." *In re Klutchko*, 338 B.R. at 567 (citation omitted).  *See also Sanderson v. Ptasinski (In re Ptasinski)*, 290 B.R. 16, 22-23 (Bankr. W.D.N.Y. 2003) (A court may find intent to deceive in a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering" but not in mere ignorance or carelessness.) (citing *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330 (2d Cir. 1969).  The required intent may be found by inference from all of the facts.  6 *Collier on Bankruptcy*, ¶ 727.04[1][a] at 40 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007).  "[A] determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor . . . ."  *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987).

"Because a debtor is unlikely to admit to having made a deliberate misstatement, an objector may prove knowledge of falsity for purposes of Code § 727(a)(4)(A) by proving that the debtor acted with at least a reckless disregard for the truth."  *Town of Skaneateles v. Scott (In re Scott)*, 233 B.R. 32, 44 (Bankr. N.D.N.Y. 1998) (citing *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)).  "As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules."  *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (citing *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969)).

Once the plaintiff meets its initial burden to produce persuasive evidence of a false statement or omission, the burden of production shifts to the debtor to produce a credible explanation.  *See In re Klutchko*, 338 B.R. at 567.

20

A statement or omission is material if it is "related to the debtor's business

transactions, concerns the discovery of assets, business dealings, or the existence or

disposition of the debtor's property." *Pereira v. Gardner (In re Gardner)*, --- B.R. ----,

2008 WL 857443, No. 02-43420, Adv. Pro. No. 04-02970 (Bankr. S.D.N.Y. Apr. 1,

2008) (citing 6 *Collier on Bankruptcy* at ¶ 727.06-07); *see also Bank of India v. Sapru (In

re Sapru)*, 127 B.R. 306, 315 (Bankr. E.D.N.Y. 1991) (stating same).  Consequently, a

debtor cannot avoid a denial of discharge by arguing that the false statement or omission

concerned property of inconsequential monetary value.  *See id.*; *see also Guardian Indus.

Prod., Inc. of Mass. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)

(stating "the duty is on the Defendant to answer, and not evaluate.").  Omitted or

incorrect information may be "material" for purposes of section 727(a)(4)(A) even if the

failure to disclose was not prejudicial to creditors.  *See In re Klutchko*, 338 B.R. at 568.

Section 727(a)(4) was established to ensure that the trustee and the creditors

would receive reliable information in order to assist the trustee in the administration of

the estate.  *See Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr.

S.D.N.Y. 1994).  "The purpose behind 11 U.S.C. § 727(a)(4) is to enforce debtors'

of disclosure and to ensure that the debtor provides reliable information to those who

have an interest in the administration of the estate."  *In re Klutchko*, 338 B.R. at 568

(citation omitted).  Bressler's discharge is denied in a large part because he essentially

assumes a trustee's role of deciding what information is relevant or material, and thus

undercuts the central principles of chapter 7, specifically the ability of a chapter 7 trustee

to perform his or her duties.  *See In re Tornheim*, 239 B.R. 677, 684 (Bankr. E.D.N.Y.

1999) ("The cornerstone of any bankruptcy case is a debtor's fidelity to candid and

accurate financial disclosure.").  Furthermore, Bressler's conduct is precisely the type

that section 727(a)(4) is designed to prevent.  As the First Circuit stated with regard to

section 727(a)(4) –

> the very purpose of certain sections of the law, like 11 U.S.C. §
> 727(a)(4 )(A), is to make certain that those who seek the shelter of the
> bankruptcy code do not play fast and loose with their assets or with the
> reality of their affairs.  *The statutes are designed to insure that
> complete, truthful, and reliable information is put forward at the outset
> of the proceedings*, so that decisions can be made by the parties in
> interest based on fact rather than fiction . . . Neither the trustee nor the
> creditors should be required to engage in a laborious tug-of-war to
> drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) (emphasis added).

For purposes of section 727(a)(4)(A), otherwise immaterial falsehoods or

omissions can aggregate into a critical mass substantial enough to bar a debtor's

discharge.  *See In re Sapru*, 127 B.R. at 315-16 ("It is this Court's decision that even if

each falsehood or omission considered separately may be too immaterial to warrant a

denial of discharge pursuant to § 727(a)(4)(A) certainly the multitude of discrepancies,

falsehoods and omissions taken collectively are of sufficient materiality to bar the

Defendant's discharge."); *see also Corning Vitro Corp. v. Shah (In re Shah)*, 169 B.R. 17,

20-21 (Bankr. E.D.N.Y. 1994) (stating "[t]o condone the use of multiple false statements

and half truths throughout a petition violates the letter and spirit of the law. . . .an

accumulation of falsehoods add [sic] up to an intent to deceive.").  As the court stated in

*Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 394 (Bankr. M.D. Fla. 2007) –

> An occasional omission of facts is seldom sufficient to establish a
> claim of false oath. . . . Numerous omissions in statement of financial
> affairs and schedules taken together warrant the conclusion of a
> reckless disregard for the truth by the debtor.  Such reckless disregard
> for the truth is recognized to be equivalent to fraudulent intent to
> commit a false oath. . . . [N]umerous omissions that display a pattern

of misleading conduct are sufficient to establish a fraudulent false
oath.

The list of omissions by Bressler in his original and amended schedules is
significant and shows his reckless disregard for the truth.  Bressler failed to disclose the
expense of a gym membership.  Bressler did not list his student loan indebtedness.
Bressler left several creditors off original schedules, only to add them later.[7]  In the
original schedules, Bressler did not list Geraldine Ross as a creditor, a surprising
oversight since child support payments to her constituted nearly a quarter of his monthly
expenditures.  Bressler omitted several assets, including contingent rights to payment.
Neither the original schedules nor any of the amended schedules list his claim to a
$10,000 legal fee for his representation of Forrest and Steibel.  Bressler at trial testified
that he had another potential asset that he did not list – Bressler could still earn a fee for a
personal injury case and client that he referred to another attorney in the amount of one-
third the fee paid or awarded to that attorney.

### 1. Debtor's Post-Petition Estimated Expenditures and Income

Bressler was not able to adequately explain how his monthly post-petition
estimated expenditures exceeded his income, up to an amount of approximately $500 per
month, if the schedules were truthful and no one assisted him with another source of
income.  In his original schedules, Bressler estimated his monthly expenses to be $283
more than his income.  In his amended Schedule J of August 22, 2006, his estimated
monthly expenses were $478 more than his income.  As counsel for the Plaintiffs pointed
out, those negative balances were actually wider because Bressler did not account for his

---

[7] For example, in his amended Schedule J of March 12, 2007, Bressler added creditor "Computer Reporting
c/o Bilateral Creditor Crop." as holding a claim incurred in January 2002.  In his amended filings of
September 18, 2007, Bressler added Cindy Koumantoros as a creditor from a judgment debt of June 2004.

gym membership that cost approximately $90 a month.  Bressler has affirmed that he did

not receive undisclosed financial assistance from anyone but when at trial asked how he

made up the difference, Bressler stated "I did not have a negative balance."  Bressler

argued that his figures were off because they were only his best estimates of expenses

that were "difficult to calculate" but insists he later corrected them in the March 2007

amendments.  In reviewing the original and amended Schedule J, the Court fails to see

where Bressler substantially modified any "difficult to calculate" expenses.  Most of the

expenses appear to be monthly recurring expenses that were easily calculated, like the

cost of a MetroCard and the cost of cable television.  Furthermore, none of the expenses

was substantially modified, despite Bressler's multiple amendments of his schedules,

aside from the line item for recreation.  More importantly, despite Bressler's testimony,

the closing of the monthly income gap in the March 2007 amendments clearly resulted

more from Bressler earning a higher income, from $2,144 to $2,840, rather than from any

substantial modifications to the line item expenses or clarification of earlier estimates, as

Bressler claimed.  The income adjustment did not result from an adjustment to an

estimated amount but from an actual change in income.  In effect, the negative monthly

balance shows that the submissions were either false or contained a material omission,

and Bressler's purported explanation of the shortfall contributes to his lack of credibility.

 2. *Student Loans*

 Bressler did not offer sufficient justification for not listing his student loans.

Although such loans are nondischargeable, unless "undue hardship" standard under

section 523(a)(8) were sought and established, the schedules clearly require information

on student loans, and do not provide an option of nondisclosure if the debtor feels they

are nondischargeable.  In short, Bressler should not have exercised his own personal judgment as to whether the debt should be listed.  Furthermore, by not listing the loans, the creditor – the lender – has been improperly deprived of notice and the opportunity to be heard.  Bressler's determination that he would not seek a discharge of the student loans does not justify not listing the student loans.  Under Bressler's logic, only those debtors who were going to seek a discharge of their student loans would be required to list them.  Whether a discharge would be sought or not, the lender has a right to know of a debtor's filing for any number of reasons, including to appraise the current financial condition of the debtor so as to assess the debtor's ability to satisfy a nondischargeable debt after the debtor's other debts were discharged.

### 3.  Contingent Legal Fee of $10,000 for Representing Forrest and Steibel

The original and amended schedules do not list Bressler's claim to the $10,000 legal fee for his representation of Forrest and Steibel, and he did not disclose his interest in the fee to the trustee at the 341 Meeting.  The interest was revealed for the first time by Forrest and Steibel in connection with their motion for summary judgment.  Bressler at trial argued that if he is granted a discharge by the Court then his counterclaim for the legal fee held in escrow would be simultaneously dismissed, because both the debt and fee stem from the same "transaction."  Bressler made the further argument that if he is granted a discharge than "those attorney fees get put back in Forrest's and Steibel's hands."  Bressler made a similar argument in his Objection to the Plaintiffs' Motion for Summary Judgment with Memorandum of Law (ECF Docket Adv. Pro 06-1908, Doc. No. 20), stating that "if the claims of the plaintiffs are discharged than so is my claim for

escrow monies . . . If this is an incorrect legal assumption, it falls under the category of

mistaken belief." (*Id*. at ¶ 23.)

There are a number of inconsistencies in Bressler's arguments. If Bressler were

granted a discharge in bankruptcy, and then *prevailed* in Forrest and Steibel's state court

action by being found to have not committed malpractice, the Court, although not finding

so at this stage, sees no impediment for the claim to the $10,000 in legal fees. Further,

the discharge of Bressler's debts is not determinative of whether the legal fees should be

paid. Regardless of Bressler's explanation, the interest in the legal fees is property of the

estate, and any issue as to its realization needs to be addressed by the trustee.

Second, Bressler's purported explanations fail to explain why the fee was not

listed in the original schedules, or why he did not reveal it during the 341 Meeting. Even

if Bressler assumed his claim to the fee would be dismissed or set-off automatically

should he be granted a discharge in bankruptcy, Bressler still had a claim to the amount

that became property of the estate under section 541 upon his filing the Petition.

The $10,000 fee is unquestionably an interest of the estate that existed when

Bressler filed the Petition, and should have been listed in the original schedules and

disclosed to the trustee. At trial it was revealed that Bressler refused to waive his right to

the fee before the state court. That shows a recognition of the interest in and value of that

right. Issues as to the fee's collection and potential offset would have likely arisen, of

course, but those issues were for the trustee to address and attempt to realize on behalf of

the estate. Those were not issues for Bressler to decide based on his own interpretation

of the Bankruptcy Code. Like his decision not to list his student loans, Bressler

improperly makes up his own rules. He improperly assumes the role of the trustee to

determine what assets may be worthy to pursue.  Such judgment was not his to make.

*See In re Klutchko*, 338 B.R. at 568 (explaining that the debtor's duty is not to determine

what should be disclosed to his creditors; it is to answer truthfully and leave to the

creditors or parties-in-interest to judge whether that information will aid them).  In short,

Bressler made a material omission of an asset based on his own judgment as to what

should or should be listed.

### 4.  *Potential Referral Fees From Other Attorneys*

Bressler also never listed another potential asset, a referral fee he may be entitled

to from an attorney and former colleague, Scott Epstein ("Epstein").  At trial, counsel for

Forrest and Steibel raised the issue of a referral fee in his examination of Bressler.

Bressler testified that, prior to filing his Petition, he had "routinely" referred numerous

cases to a friend and fellow attorney, Epstein.  Bressler indicated that of all the referred

cases, at least one has not been settled or reduced to judgment, and consequently Bressler

may be entitled to collect a referral fee of one-third of the fees payable from the recovery.

Bressler attempted to downplay the asset by stating he would have to undergo a

"complicated" process involving filing a motion to collect the fee.

Bressler did not adequately explain why he did not list the asset in the schedules.

The reason does not seem to be that Bressler forgot about the referred case altogether, as

Bressler's testimony indicated he had some familiarity with the steps he would have to

take as a disbarred attorney to collect the fee.  Rather, as with the claim against Forrest

and Steibel and the student loans, Bressler substituted his own judgment as to what

should or should not be listed in the schedules.[8]  It is also important to note that Bressler

did not volunteer the referral fee information.  Rather, it only came to light at trial under

direct questioning from the Plaintiffs.  Further, given Bressler's demonstrated lack of

candor, the Court cannot accept his representation that only one potential fee exists

without an investigation by the trustee as to the value to the estate of the fee or fees.

5. *The Gym Membership Expense*

Although Bressler excuses his failure to include his gym membership

expenditures in the original schedules as an oversight that was corrected in his amended

schedule of March 12, 2007, Bressler only acknowledged the expenditure and the unusual

way he paid for it after Strassberg has discovered the information via a subpoena, and

Forrest and Steibel included it in their adversary complaint.  Thus, Bressler's post-

disclosure explanation has little recuperative effect.  *See Katz v. Kurtaj (In re Kurtaj)*,

284 B.R. 528, 530 (Bankr. D. Conn. 2002) ("A debtor's disclosure of information

previously omitted from schedules is some evidence of innocent intent, but this inference

is slight where the debtor has amended his schedules after the trustee or creditors have

already discovered what the debtor sought to hide."); *see also Zitwer v. Kelly (In re

Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992) (stating an "[a]mendment does not

expunge the falsity of an oath . . . . [however] the court may consider the debtor's

subsequent voluntary disclosure as evidence of innocent intent.").

6. *The Failure of the Duty to Disclose*

Bressler attempts to paint himself as an untapped source of relevant information

for the Plaintiffs and the trustee.  He complains that the Plaintiffs have never asked him

---

[8]  Bressler also affirmed at trial that at the 341 Meeting he told the trustee that he had no pending interest in
any lawsuit.  That indicates Bressler failed to disclose his interest in his counterclaim against Forrest and
Steibel for his attorney fees and his interest in a referral fee from Epstein.

for certain information, such as day care receipts, records of payments for child support, and rent, and that the absence of such records should not be held against him.

Regardless of whether Plaintiffs should have asked him for further information regarding certain issues of which they knew, what Bressler fails to recognize or acknowledge is that he has the initial obligation in the Petition and the schedules to present an accurate picture of his financial condition.  Such information is the foundation or starting point from which the trustee, creditors, and interested parties proceed.  By presenting an incomplete picture from the beginning – i.e., no record of child support, no student loan information, no information regarding Ayers, no listing of the potential referral fees or the counterclaim against Forrest and Steibel – Bressler has frustrated any interested party's attempt to first know his financial condition and then logically construct inquiries around such knowledge.  *See, e.g., Corning Vitro Corp. v. Shah (In re Shah)*, 169 B.R. 17 (Bankr. E.D.N.Y. 1994) (the debtor's "duty is merely to answer truthfully.  It is left to the creditors or parties-in-interest to judge whether that information will aide them or prejudice them."); *In re Klutchko*, 338 B.R. at 568 (explaining that the debtor's duty is not to determine which assets should be disclosed to his creditors; it is to answer truthfully and leave to the creditors or parties-in-interest to judge whether that information will aid them).  Further, even when the trustee directly asked for certain information, Bressler was not forthcoming.  As noted above in footnote 5, Bressler told the trustee at the 341 Meeting that he had no pending interest in any lawsuit, which was not correct.  Further, Bressler's testimony supports a finding that that failure was done knowingly.

That lack of candor undercuts certain defenses of Bressler.  For example, he complained at trial that the student loan omission should not be held against him because it was not in any of the Plaintiffs' complaints.  At the time of the adversary complaints, however, the creditors did not know that Bressler had failed to list his student loan information because no one – aside from Bressler and the lenders apparently – knew about the loans when Bressler filed the Petition.  Bressler at trial stated that when he communicated with the lenders recently they were aware of his bankruptcy filing.  It is not clear how the lenders became aware of the filing, but nonetheless Bressler admits, and the schedules demonstrate, that the lenders were not listed as creditors, and no notice was sent to them by the Court.

Based on the above, granting Bressler a discharge would frustrate the central purpose of section 727(a)(4) – to ensure that trustees and creditors receive reliable information from debtors to assist in the administration of an estate.  For the above-stated reasons, Bressler is denied a discharge pursuant to section 727(a)(4) because of certain material omissions in his filings, and because the multitude of omissions clearly establish a reckless disregard for the truth.

D.  Bressler's Credibility

The Court must also stress that it found Bressler's credibility at trial to be lacking, in part because of his inconsistent and illogical explanations.  One example comes from the Plaintiffs' questioning of Bressler as to whether Ayers was a creditor of the estate within a year of the Petition.  During that line of questioning, Bressler affirmatively stated that he had records of his financial transactions with Ayers at home.  When pressed further about what records he had, Bressler grew evasive and did not provide an answer.

Bressler was also evasive and seemed to lack credibility in his answers regarding the personal injury cases Bressler referred to Epstein. Bressler at first stated that he "routinely" referred personal injury cases throughout his career to Epstein but later, on direct questioning from the Court, stated he only referred "four or five" cases in total. Bressler also offered inconsistent answers about the resolution of those referrals. He at one point stated that of the referred cases, none were potentially pending, meaning they had not been settled, reduced to judgment, or otherwise disposed of, at the time of his disbarment. He later, however, admitted that at least one case was potentially active.

As another example, Bressler closed his personal bank account in 2005, not long after Strum obtained the judgment against Bressler and began trying to enforce it. Bressler at trial claimed that he closed the bank account because of high bank fees, such as ATM and low-balance fees, and because he was not accumulating interest in the account. Bressler stated that he concluded that it was not "practical" to keep the checking account open and, instead, chose to pay his bills by money orders. Bressler's explanation flies in the face of everyday experience. Generally bank customers do not have to pay ATM fees when they use the ATM of their bank, and potential customers can find checking accounts with no or low minimum balance requirements and accounts where they do not have to pay a significant amount for each check. Furthermore, the Court's experience has been that money orders generally cost more than writing a check and are less convenient, since obtaining them requires a visit to a merchant who sells them. Furthermore, considering his other testimony, Bressler is asking the Court to believe that he found having a personal checking account less practical than asking a third party, Ayers, for assistance in cashing his paychecks and paying other bills by money orders.

31

That defies logic.  Bressler's strained explanations raise the possibility that Bressler

chose to close the account for less innocent reasons, such as the desire to have an

untraceable and unattachable financial record.  Although the Court has found that the

Plaintiffs failed to establish that Bressler's action regarding his method of paying his rent

and cashing his pay check demonstrated an "actual intent to hinder, delay, or defraud"

under section 727(a)(2), Bressler generally lacked credibility and his illogical

explanations only serve to reinforce that conclusion.

### Conclusion

For the foregoing reasons, the Court concludes that the Defendant's discharge is

denied pursuant to section 727(a)(4).  For the sake of completeness, the Court also

concludes that Bressler's debt to Strum should not be found to be nondischargeable

pursuant to section 523 and that the Plaintiffs' objection to discharge pursuant to section

727(a)(2) is denied.

Counsel for Forrest and Steibel is to settle an order consistent with this opinion,

and should provide in that order that the chapter 7 trustee shall investigate potential assets

of Bressler's including but not limited to referral fees from Epstein or any other attorney

and Bressler's claim for $10,000 in fees for his representation of Forrest and Steibel.

Further, that order should provide for an order paragraph directing Bressler to

amend his schedule to list the holder of his student loans as a creditor.


Dated: New York, New York
       May 15, 2008

                              s/Arthur J. Gonzalez
                              UNITED STATES BANKRUPTCY JUDGE